**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Luana L. Boyan, | No. CV-18-08340-PHX-SPL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Luana Lee Boyan's Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 30, "Pl. Br.") Defendant SSA Commissioner's Response Brief (Doc. 34, "Def. Br."), and Plaintiff's Reply Brief (Doc. 35, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 29, "R.") and now reverses and remands the Administrative Law Judge's decision (R. at 31–41) for a new disability determination.

**I.   BACKGROUND**

Plaintiff filed an Application for Disability Insurance benefits on November 7, 2014, for a period of disability beginning on January 31, 2014. (R. at 31.) Her claim was denied initially on March 6, 2015, and upon reconsideration on August 17, 2015. (R. at 31.) Plaintiff appeared before the ALJ for a video hearing regarding her claim on May 25, 2017,

which the ALJ denied on November 28, 2017. (R. at 31, 41.) On August 30, 2018, the Appeals Council denied Plaintiff's Request for Review and adopted the ALJ's decision as the agency's final decision. (R. at 17–19.)

The Court has reviewed the medical evidence in its entirety and will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: breast cancer status-post partial mastectomy, in remission, but with residual fatigue and pain; benign hypertension; ischemic heart disease/coronary atherosclerosis status-post stent placements in 2012; and chronic venous insufficiency. (R. at 35.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff was not disabled from the alleged disability onset-date through the date of the decision. (R. at 41.) The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 36.) Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC") and found that "[Plaintiff] has the [RFC] to perform a full range of light work as defined in 20 CFR 404.1567(b)." (R. at 37.) Accordingly, the ALJ found that Plaintiff can perform past relevant work as a traffic clerk and traffic manager. (R. at 41.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a

"specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

**III.    ANAYSIS**

Plaintiff raises three issues for the Court's consideration. First, Plaintiff argues the ALJ erred at step two by not considering all relevant evidence in determining whether Plaintiff's generalized anxiety disorder was nonsevere. (Pl. Br. at 20–23.) Next, Plaintiff argues the ALJ erred in assigning no weight to the completed RFC assessment created by Dr. Mohammed Golparian and in assigning great weight to state agency medical consultants, Dr. Luther Woodcock and Dr. Allen Radkowsky's medical opinions. (Pl. Br.

at 7–15.) Finally, Plaintiff argues the ALJ erred in rejecting her symptom testimony. (Pl. Br. at 15–20.)

The Court finds the ALJ did err at step two by not considering all relevant evidence in determining whether Plaintiff's generalized anxiety disorder was nonsevere. Second, the ALJ did not err in assigning weight to the experts' medical opinions because the ALJ provided specific and legitimate reasons for the weight assigned to the opinions. Last, the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony by showing that Plaintiff's symptom testimony conflicted with the medical evidence and Plaintiff's activities of daily living ("ADLs"). For the following reasons, the Court reverses and remands for a new disability determination.

**A.     The ALJ erred at step two by not considering all relevant evidence in determining Plaintiff's generalized anxiety disorder was nonsevere.**

The Ninth Circuit Court of Appeals interprets the severity requirement as a "*de minimis* screening device" designed to weed out groundless claims. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). An impairment is not severe if it does not significantly limit the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520(c). "Basic work activities are 'abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling.'" *Smolen*, 80 F.3d at 1273 (citing 20 C.F.R. § 404.1520(b) (2014)). Only if the evidence establishes a "slight abnormality that has no more than a minimal effect on an individual's ability to work" should the ALJ end the inquiry at step two. Soc. Sec. Ruling 85-28; *Smolen*, 80 F.3d at 1290. An ALJ's decision to do so shall be affirmed only where it is "clearly established by medical evidence." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

At step two, in analyzing Plaintiff's medically determinable impairment of generalized anxiety disorder, the ALJ found that Plaintiff had a mild limitation in the first functional area of understanding, remembering, or applying information. (R. at 35.) The ALJ found that the functional area of interacting with others, Plaintiff also had a mild limitation. (R. at 35.) In the third functional area of concentrating, persisting, or maintain

- 4 -

pace, the ALJ found Plaintiff has a mild limitation. (R. at 35–36.) The fourth functional area is adapting or managing oneself, and the ALJ found Plaintiff had a mild limitation. (R. at 36.)

Plaintiff argues the ALJ erred in neglecting to consider relevant evidence in finding that Plaintiff's generalized anxiety disorder was nonsevere. (Pl. Br. at 21; R. at 36.) Plaintiff points out that a generalized anxiety screening showed she had severe anxiety and major depression. (R. at 644–45, 669–70.) Plaintiff argues she underwent mental health treatment and had a global assessment functioning ("GAF") score of 59, which suggests moderate depression. (Pl. Br. at 21; R. at 660–62, 668–74, 677, 679, 681–82, 689, 693–706.) Plaintiff explained that she had memory issues and isolated herself socially. (Pl. Br. at 21; R. at 558–63.) Plaintiff also took the medication Effexor. (Pl. Br. at 21; R. at 502–05.)

Though the ALJ cites to evidence supporting a finding on a nonsevere impairment, Plaintiff points out there is contradictory evidence, as well. The evidence Plaintiff cites to shows that there is more than a "slight abnormality" in her generalized anxiety disorder. *See* Soc. Sec. Ruling 85-28; *Smolen*, 80 F.3d at 1290. The evidence indicates that Plaintiff's generalized anxiety disorder could have more than a minimal effect of her ability to work. Because the ALJ only cited to specific evidence supporting his finding that Plaintiff's generalized anxiety disorder is nonsevere and failed to consider other relevant evidence, the Court finds the ALJ erred at step two.

**B.    The ALJ did not err in assigning weight to the medical opinions of Dr. Golparian, Dr. Woodcock, and Dr. Radkowsky.**

Plaintiff argues the ALJ erred in assigning weight to the opinions of Dr. Golparian, Dr. Woodcock, and Dr. Radkowsky. (Pl. Br. at 7–15.) While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of

doctors who did not treat the claimant." *Id.* This is so because treating physicians have the advantage of in-person interaction and typically a longer history of treatment than a claimant's other doctors, and their "subjective judgments . . . are important, and properly play a part in their medical evaluations." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester*, 81 F.3d at 830–31). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

First, the ALJ assigned no weight to Dr. Golparian's opinion because it was inconsistent with the medical record and Plaintiff's daily activities. (R. at 40.) On December 5, 2016, Dr. Golparian completed an RFC assessment that showed Plaintiff had severely restrictive functional limitations. (R. at 39, 566–71.) The ALJ pointed out that Dr. Golparian opined that Plaintiff could never lift or carry any weight, sit or stand for three hours in an eight-hour workday, walk for two hours in an eight-hour workday, never perform postural activities except occasional balancing, and occasionally operate a motor vehicle. (R. at 40.) Dr. Golparian also opined that Plaintiff could not shop, travel without a companion, walk a block, use public transportation, care for her personal hygiene, or sort papers. (R. at 40, 566–71.)

The ALJ found Dr. Golparian's opinion was inconsistent with other medical evidence and with Plaintiff's own statements regarding her activities. (R. at 40.) The ALJ notes that Dr. Golparian indicated there were no acute findings in the lumbar spine and only mild arthritis in an x-ray examination conducted on October 13, 2016. (R. at 40, 803.) In a November 2016 stress test, Plaintiff demonstrated good exercise tolerance and

displayed no signs of chest pain. (R. at 40, 725, 728.) In April 2017, Plaintiff was examined by Dr. Simak Rassadi, and the findings were within normal limits. (R. at 40, 740–43.) Finally, the ALJ noted that Plaintiff's own testimony showed she was able to tend to her personal hygiene, prepare simple meals, drive, go out by herself, and go grocery shopping with her boyfriend. (R. at 40, 281–84, 551, 560.)

Plaintiff argues the ALJ rejected Dr. Golparian's opinion based on an x-ray showing mild osteoarthritis, but that Dr. Golparian's opinion encompasses more, including residuals from breast cancer such as fatigue, neuropathy, and medication side effects resulting in memory loss and costochondritis pain. (Pl. Br. at 12; R. at 40, 567.) But the ALJ points to specific evidence in the medical record that contradicts Dr. Golparian's opinions. For example, in October 2016, Plaintiff had a lumbar spine imaging that showed no acute findings and mild osteoarthritis. (R. at 40, 803.) Additionally, the ALJ refers to a November 2016 stress test that showed good exercise tolerance and revealed no signs of chest pain or significant arrhythmia. (R. at 40, 725, 728.) The ALJ also explained that an April 2017 examination showed a grade III murmur but indicated there were no other abnormalities. (R. at 40, 742.)

Plaintiff also contends the ALJ erred in assigning no weight to Dr. Golparian's opinion based on Plaintiff's daily activities. (Pl. Br. at 12–13.) Plaintiff points out that she was unable to walk for long periods of time; she could only do household chores, such as dishes, in increments; her boyfriend had to help her shop; she cannot exercise because it feels like she cannot breathe; and though she did not need help with personal hygiene, it takes her two hours to get ready. (Pl. Br. at 12–13; R. at 334–35, 551, 559–60, 666.) Plaintiff argues her daily activities are consistent with Dr. Golparian's opinion that Plaintiff has problems with personal hygiene, could not use public transportation, could not shop alone, and could not walk at a reasonable pace. (Pl. Br. at 13; R. at 560, 571, 666.) Again, the ALJ demonstrated that Dr. Golparian's opinion was not consistent with Plaintiff's daily activities, which showed, for example, Plaintiff can prepare simple meals, drive, grocery

shop, care for her personal hygiene, perform simple household chores, and manage her finances. (R. at 40, 281–84, 551, 560.)

The Court finds that the ALJ has not erred in assigning no weight to Dr. Golparian's opinion. The ALJ provided specific and legitimate reasons supported by substantial evidence for assigning no weight to Dr. Golparian's opinion. The ALJ cited to specific evidence in the medical record and pointed out Plaintiff's daily activities that directly contradict Dr. Golparian's opinion.

Next, the ALJ assigned great weight to the opinions of Dr. Woodcock and Dr. Radkowsky. (R. at 39.) Both opined that Plaintiff could lift and carry 20 pounds occasionally and ten pounds frequently and walk for six hours in an eight-hour workday. (R. at 39, 106–07, 122–24.) The ALJ reasoned that though Dr. Woodcock and Dr. Radkowsky did not examine Plaintiff, they both considered evidence in the record. (R. at 39.) For example, both doctors considered that on July 1, 2015, when Plaintiff presented for a consultative examination, Plaintiff's physical examination was within normal limits, and that on June 4, 2016, Plaintiff indicated she had weakness and tingling in her lower extremities but ambulated normally without an assistive device. (R. at 39, 550–56.) The ALJ pointed out that Dr. Woodcock and Dr. Radkowsky also reviewed records indicating Plaintiff had intact sensation to light touch, monofilament in the bilateral lower extremities, symmetrical reflexes, and 5/5 motor, tone, and strength. (R. at 39, 624.) The ALJ also cited to evidence that Plaintiff went to the emergency room on March 15, 2017, for chest pain and she had mild chest wall tenderness but retained normal musculoskeletal range of motion and strength. (R. at 39, 871.) For these reasons, the ALJ assigned Dr. Woodcock and Dr. Radkowsky's opinions great weight. (R. at 39.)

Plaintiff argues the ALJ erred in assigning great weight to Dr. Woodcock and Dr. Radkowsky's opinions because their opinions were rendered in February 2015, before much of the medical evidence in the record even existed. (Pl. Br. at 9.) Plaintiff points out that after Dr. Woodcock and Dr. Radkowsky's opinions were written, Plaintiff had ongoing treatment for join pain, excessive fatigue, and dizziness. (Pl. Br. at 9; R. at 573, 627–34,

733–35, 737, 748–51, 1063–65.) Additionally, Plaintiff points out that their opinions predate an EMG showing mild sensory motor and autonomic peripheral neuropathy and an increase in Gabapentin and an x-ray showing mild osteoarthritis of the sacroiliac joints. (Pl. Br. at 9; R. at 681, 757.) Plaintiff also notes that Dr. Woodcock and Dr. Radkowsky did not have Dr. Golparian's RFC, evidence of Plaintiff's abnormal echocardiogram, and Dr. Beyer's diagnosis of costochondritis. (Pl. Br. at 9; R. at 566–71, 708–14, 733–35.)

Regardless, the ALJ provided specific and legitimate reasons for assigning great weight to Dr. Woodcock and Dr. Radkowsky's opinions. The ALJ pointed to specific evidence in the record that supported Dr. Woodcock and Dr. Radkowsky's opinions. For example, the ALJ explained that Dr. Woodcock and Dr. Radkowsky's opinions included Dr. Justin Garrison's normal examination findings in July 2015. (R. at 39, 550–56.) The ALJ also cited to records showing Plaintiff had normal ambulation, strength, and reflexes, as well as a March 2017 physical examination that showed normal physical findings when Plaintiff went to the emergency department look for treatment for pain. (R. at 39, 624, 871.) Additionally, this Court has found the ALJ did not err in assigning no weight to Dr. Golparian's opinion, so Dr. Woodcock and Dr. Radkowsky's opinions are not lacking because they did not consider Dr. Golparian's opinion. Further, though Dr. Woodcock and Dr. Radkowsky did not consider Dr. Beyer's opinion that there was no good treatment for Plaintiff's chest pain, as Defendant points out, Dr. Beyer also opined that conservative treatment, such as massage and physical therapy could help control Plainitff's symptoms. (Def. Br. at 14; R. at 714.) The Court finds the ALJ provided specific and legitimate reasons supported by substantial evidence in assigning great weight to Dr. Woodcock and Dr. Radkowsky's opinions.

**C.  The ALJ provided specific, clear, and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony.**

Plaintiff argues the ALJ erred in rejecting her symptom testimony. (Pl. Br. at 15–20.) An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment

"which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). If the claimant presents such evidence then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen*, 80 F.3d at 1281). This is the most demanding standard in Social Security cases. *Id*. at 1015. "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

Here, the ALJ found "[Plaintiff's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the alleged intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained throughout this decision." (R. at 37–38.)

Plaintiff underwent radiation therapy and did a nine-month course of Tamoxifen as treatment for breast cancer in her left breast. (R. at 38, 391–412, 451–52.) Plaintiff also had treatment of coronary artery disease and had stents implemented in the left anterior descending coronary artery and left circumflex arteries in 2012. (R. at 38, 409–12, 451–52.) Plaintiff has not had recurring or spreading cancer since her treatment, and she has not required additional stenting since her procedures. (R. at 38.) Plaintiff has, however experienced rib pain, fatigue and shortness of breath. (R. at 38, 423, 425–26, 467, 470.)

The ALJ found that Plaintiff's medical examinations show she had a greater degree of functional ability than she alleged despite her symptom testimony. (R. at 38.) In a November 2014, medical examination Plaintiff had significant findings for a physiologically split S2, but the other medical findings were normal. (R. at 38, 467–68.) In January 2015, Plaintiff had a follow up examination that, again, had significant findings

for a physiologically split S2, but were otherwise normal, and Plaintiff reported exercising and feeling well. (R. at 38, 465.) At that same medical appointment, the doctor noted Plaintiff's hypertension was well controlled with medication. (R. at 38, 465.) A nuclear and exercise stress test in November 2016 showed Plaintiff had good exercise capacity. (R. at 38, 725, 728.) Plaintiff also did not show any evidence of joint abnormalities, compromised muscle tone, or restricted range of motion in a March 2017 medical examination. (R. at 38, 712–13.)

Plaintiff's only argument for why the ALJ erred in considering the medical record in discounting Plaintiff's symptom testimony is that the ALJ did not include evidence of Plaintiff's abnormal echocardiogram and her diagnosis of autonomic and sensory neuropathy. (Pl. Br. at 17; R. at 581, 586, 617, 623, 733–35.) Plaintiff takes issue with the fact that the ALJ did not include this impairment at step two but does not provide any analysis. (Pl. Br. at 17; R. at 35.) Therefore, the Court will not consider the argument. *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) (finding that arguments that are presented without substantive analysis are waived). The Court finds the ALJ provided specific, clear, and convincing reasons for why the medical evidence differs from Plaintiff's symptom testimony by citing to specific medical evidence in the record.

The ALJ also explained that Plaintiff's ADLs were inconsistent with her symptom testimony. (R. at 38–39.) Plaintiff indicated she could tend to her personal hygiene but that it took her much longer than it used to. (R. at 38, 64.) Additionally, Plaintiff explained that she could prepare simple meals, do some household chores, and manage her finances. (R. at 38, 64, 66, 68–69, 666–67.) Plaintiff also indicated she enjoys reading and watching television, and she socializes with others on the phone and computer. (R. at 38–39, 69–70, 77–79, 285, 560.) The ALJ explained that though these activities may not translate to Plaintiff's ability to perform unrestricted substantial gainful activity, Plaintiff's ADLs show that she had a greater degree of functioning than alleged. (R. at 38–39.)

Plaintiff also argues the ALJ erred in rejecting her symptom testimony based on Plaintiff's ADLs, but Plaintiff's analysis merely recounts the same ADLs the ALJ outlined

in the analysis. Plaintiff's argument does not demonstrate any error. The Court finds the ALJ provided specific, clear, and convincing reasons showing Plaintiff's ADLs contradicted her symptom testimony.

### D.     The credit-as-true rule does not apply.

Plaintiff asks the Court for an award of benefits rather than further proceedings, but Plaintiff does not apply the "credit-as-true" rule. (Pl. Br. at 23.) The credit-as-true rule only applies in cases where three elements are present. *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099–1102 (9th Cir. 2014). First, the ALJ must have failed to provide legally sufficient reasons for rejecting medical evidence. *Id.* at 1100. Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and the Court must find that further administrative proceedings would not be useful. *Id.* at 1101. Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Id.* Third, if the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id.* (citations omitted).

Here, the ordinary remand rule, not the credit-as-true rule, applies. Because the ALJ erred at step two, he did not consider all the relevant medical evidence and the credit-as-true rule fails at step one. The Court reverses and remands for further consideration of the medical record at step two and for a new disability determination.

**IT IS THEREFORE ORDERED** reversing and remanding the November 28, 2017 decision of the Administrative Law Judge for a new disability determination. (R. at 31–41.)

///
///
///
///
///

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 13th day of August, 2021.

Honorable Steven P. Logan
United States District Judge